# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5200 | **DATE** | 12/20/2002 |
| **CASE TITLE** | Stericycle, Inc. vs. Craig Sanford and Mary Jo Sanford | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion to dismiss for lack of personal jurisdiction [5-1] is granted and defendants' motion to transfer venue [5-2] is denied as moot. Case dismissed without prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 3 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | DEC 23 2002 date docketed | |
| | Notified counsel by telephone. | | | 11 |
| | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. Mailed by MD. | | | |
| | Copy to judge/magistrate judge. | | 12/20/2002 date mailed notice | |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | MD mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| STERICYCLE, INC., | ) | |
| Plaintiff, | ) ) ) | **DOCKETED**<br>DEC 2 3 2002 |
| vs. | ) ) ) | No. 02 C 5200<br>Judge Joan H. Lefkow |
| CRAIG SANFORD and MARY JO SANFORD, | ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

In this action brought by plaintiff, Stericycle, Inc. ("Stericycle"), alleging state law breach of contract claims in a three-count Complaint, defendants, Craig Sanford ("Craig") and Mary Jo Sanford ("Mary Jo") (collectively the "Sanfords"), have moved under Rule 12(b)(2), Fed. R. Civ. P., to dismiss Stericycle's Complaint for lack of personal jurisdiction, or, alternatively, under 28 U.S.C. § 1404(a), to transfer venue of this case to the Eastern District of Pennsylvania. Stericycle is a Delaware corporation with its principal place of business in Illinois. Craig and Mary Jo are citizens of Pennsylvania. The amount in controversy exceeds $75,000. The court, therefore, has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(2) (diversity). For the reasons set forth below, the court grants the motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) and denies as moot the motion to transfer venue under 28 U.S.C. § 1404.

## MOTION TO DISMISS STANDARDS

In deciding a motion to dismiss for lack of personal jurisdiction, the court must take as true any jurisdictional allegations asserted by the plaintiff in the Complaint. *Turnock* v. *Cope*, 816 F.2d 332, 333 (7th Cir. 1987). The court may also consider affidavits submitted in

connection with the motion, *Curry* v. *Vencor Hosp.*, No. 01 C 4256, 2002 WL 398602, at *1 (N.D. Ill. March 14, 2002); *R.R. Donnelly & Sons Co.* v. *Intera Info. Technologies Corp.*, No. 91 C 2511, 1991 WL 191588 (N.D. Ill. Sept. 18, 1991), but will resolve conflicts of fact in favor of the plaintiff. *John Walker & Sons, Ltd.* v. *DeMert & Doughtery, Inc. et al.*, 821 F.2d 399, 402 (7th Cir. 1987), citing *Deluxe Ice Cream Co.* v. *R.C.H. Tool Corp.*, 726 F.2d 1209, 1215 (7th Cir. 1984). Ultimately, it is the plaintiff's burden to establish personal jurisdiction. *Central States, Southeast and Southwest Areas Pension Fund* v. *Reimer Express World Corp.*, 230 F.3d 934, 939 (7th Cir. 2000).

## BACKGROUND

Stericycle is the largest provider of regulated medical waste management services in the United States, providing regulated medical waste collection, transportation, treatment and disposal services to over 275,000 customers in 48 states. (Compl. ¶ 2.) Craig and Mary Jo, husband and wife, are entrepreneurs who have owned and operated a number of businesses that involved the processing and disposal of medical waste, including Sanford Motors, Inc. (located and incorporated in Pennsylvania), East Coast Medical Waste, Inc. (located and incorporated in New Jersey), and Bucks County Resource Recovery, Inc. (located and incorporated in Pennsylvania) (collectively "SMI Businesses"). (Compl. ¶ 3; Craig Sanford Aff. ¶¶ 10-12.)

Med/Waste, Inc. ("Med/Waste"), which is not a party to this action, was a holding company that, through its subsidiary companies, provided medical waste management services primarily in the eastern and southeastern United States. (Compl. ¶ 6.) Through its subsidiaries, Med/Waste also operated medical waste disposal and treatment facilities throughout its service area, including a medical waste autoclave treatment facility located in Marcus Hook,

2

Pennsylvania ("Marcus Hook Facility"). (*Id.*) In 1998, Med/Waste acquired the SMI Businesses from the Sanfords.[1] (*Id.*)

In or about early 2000, Stericycle negotiated with Med/Waste for the purchase of some or all of Med/Waste's subsidiary businesses or assets. (Compl. ¶ 70.) On May 30, 2002, Stericycle and Med/Waste entered into a letter of intent ("Stericycle LOI") that set forth the terms of a possible acquisition. (*Id.*) Portions of the Stericycle LOI were made expressly binding on the parties even if a deal was not later completed, including a provision which provided in pertinent part:

> In the event Stericycle does not purchase all of the assets of or legal entities that make up the [Med/Waste] Business, Stericycle will have a right of first refusal to acquire any remaining assets or entities of the Business for a period of two years following closing or, if this letter is terminated prior to closing, for a period of one year following the termination of this letter.

(Compl. ¶ 8.) Stericycle did not subsequently acquire the assets or entities that comprised the Med/Waste business and, accordingly, Stericycle had a right of first refusal to acquire Med/Waste's assets or entities. (Compl. ¶ 9.)

At all times pertinent to this lawsuit, Med/Waste was experiencing significant financial difficulties, with lenders and other creditors who held security interests in certain Med/Waste assets demanding that Med/Waste fulfill its obligations to them. (Compl. ¶ 10.) As of early October 2001, Med/Waste owed the Sanfords $7 million from its acquisition of the SMI Businesses. (Compl. ¶ 11.) In an effort to resolve their claims against Med/Waste, the Sanfords entered into discussions with Med/Waste for the Sanfords to re-acquire the SMI Businesses from

---

[1] Stericycle had discussions at this time to purchase the SMI Businesses from the Sanfords, and during these discussions the Sanfords visited Stericycle's office in Illinois. (ten Brink Decl. ¶ 5.)

3

Med/Waste, along with the Marcus Hook Facility (collectively "the Assets"). (Compl. ¶ 12.)

In the summer of 2001, Craig called Stericycle's CFO, Frank ten Brink ("ten Brink"), at ten Brink's office in Illinois. During that call, Craig initiated discussions with Stericycle concerning Stericycle's right of first refusal on the Assets. Since the Sanfords did not intend to operate the Assets but instead wished to sell them, and because Stericycle had an interest in acquiring the Assets so long as it had assurances that the Sanfords would not disrupt any acquisition, Stericycle and the Sanfords discussed the possibility of Stericycle waiving its rights under the Stericycle LOI whereby the Sanfords could then reacquire the Assets from Med/Waste and sell them to Stericycle. (Compl. ¶ 18; ten Brink Decl. ¶ 9.) Thereafter, Craig initiated frequent telephone discussions with ten Brink about a possible Stericycle deal with the Sanfords. These calls included a July 23, 2001 call in which a deal was discussed, an August 20, 2001 call by Craig informing Stericycle that the Sanfords had made an offer to Med/Waste, an August 27, 2001 call updating Stericycle on the proposed deal with Med/Waste, followed by at least seven more such updates, and a September 11, 2001 call in which Craig advised ten Brink that the Sanfords had reached a tentative agreement with Med/Waste. (ten Brink ¶¶ 12-14.)

On or about October 3, 2001, the Sanfords submitted a letter of intent to Med/Waste ("Sanford LOI") offering to purchase the Assets for a total price of $11.7 million which price included $4.5 million in cash and forgiveness of Med/Waste's $7 million debt to the Sanfords. (Compl. ¶ 13.) Negotiations also continued between Stericycle and the Sanfords, with the Sanfords corresponding with Stericycle on an October 4 phone call and fax, an October 6 phone call, an October 8 faxed agreement for assignment, and an October 9 revised agreement. (ten Brink Decl. ¶ 17.)

4

On October 17, 2001, the Sanfords faxed to Stericycle a signed "Agreement for Assignment of Purchase Rights, and Right of First Refusal, and Proposed Acquisition Terms" ("October 17 Agreement"), to which Stericycle agreed.[2] (Compl. ¶ 20.) The October 17 Agreement provided that Stericycle would purchase the Assets from the Sanfords pursuant to terms set forth on an attachment to the Agreement. (Compl. ¶ 21.) After entering into the October 17 Agreement, the Sanfords continued their negotiations with Med/Waste and, subsequently, with Med/Waste's bank, which came into possession of the Assets as a result of certain claims the bank made against Med/Waste. (Compl. ¶ 25.) Throughout these negotiations, the Sanfords sought Stericycle's assistance with respect to the dealings with Med/Waste and Med/Waste's bank. (ten Brink Decl. ¶¶ 19-20.) This included sending Stericycle copies of draft letters on October 19, November 16 and 17 and seeking advice from Stericycle's attorneys located in Illinois throughout the month of December.

In January 2002, the Sanfords acquired the Assets from Med/Waste. Shortly thereafter, the Sanfords indicated to Stericycle that they refused to carry out the terms of the October 17 Agreement because they believed more favorable terms were available to them from a third-party. (Compl. ¶ 29.) From January through July 2002, Stericycle engaged in negotiations with the Sanfords in an attempt to convince them to carry out the terms of the October 17 Agreement, and additionally offered the deal to the Sanfords on more favorable terms. (Compl. ¶ 30.) The negotiations included letters faxed to Stericycle, telephone conversations between Craig and ten Brink, and a June 2002 visit to Chicago by the Sanfords to attempt to negotiate a new deal. (ten Brink Decl. ¶ 25.) This Chicago visit lasted for two days, and culminated in a "handshake deal,"

---

[2]This agreement was originally drafted by Stericycle. (ten Brink Decl. ¶ 16.)

which the next day the Sanfords allegedly reneged on. (ten Brink Decl. ¶ 26.) Throughout these negotiations, the Sanfords informed Stericycle that they intended to sign a letter of intent from another prospective buyer, but the Sanfords would not disclose the letter of intent or other documentation related to the purported offer. (Compl. ¶ 31.) No subsequent agreement was reached between Stericycle and the Sanfords. (Compl. ¶ 23.)

On July 23, 2002, Stericycle filed its three-count Complaint alleging that the Sanfords breached the October 17 Agreement by (i) refusing to sell the Med/Waste assets to Stericycle, as required by Section 2.4 of the October 17 Agreement (Count I); (ii) refusing to assign their rights to the Marcus Hook Facility to Stericycle, as required by Section 1.1 of the October 17 Agreement (Count II); and (iii) refusing to provide Stericycle with sufficient information about the third-party offer to purchase the Med/Waste assets as to enable Stericycle to exercise its right of first refusal, as required by Sections 2.1 and 2.2 of the October 17 Agreement (Count III). Stericycle seeks to preliminarily and permanently enjoin the Sanfords from selling or otherwise transferring ownership of the Assets to a third-party other than Stericycle, specific performance of the October 17 Agreement and compensatory damages.

## DISCUSSION

The Sanfords have moved to dismiss the action for lack of personal jurisdiction pursuant to Rule 12(b)(2), or, alternatively, to transfer venue of this case to the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a).

### A.   Personal Jurisdiction

A federal district court sitting in diversity has personal jurisdiction over a defendant when a court of the state in which it sits would have such jurisdiction. *RAR, Inc.* v. *Turner Diesel,*

*Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997); *Klump* v. *Duffus*, 71 F.3d 1368, 1371 (7th Cir. 1995), *cert. denied*, 518 U.S. 1004 (1996). Three distinct obstacles stand in the way of a plaintiff attempting to establish personal jurisdiction: "1) state statutory law, 2) state constitutional law, and 3) federal constitutional law." *RAR, Inc.*, 71 F.3d at 1276. With respect to state statutory law, the Illinois long-arm statute provides that an Illinois court "may . . . exercise jurisdiction on any . . . basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c). Thus, the inquiry becomes whether the Illinois and federal constitutions would permit personal jurisdiction over the Sanfords. *See RAR, Inc.*, 71 F.3d at 1276; *Watchworks, Inc.* v. *Total Time, Inc.*, No. 01 C 5711, 2002 WL 424631, at *4 (N.D. Ill. Mar. 19, 2002).

The Illinois Constitution allows for personal jurisdiction "when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins* v. *Ellwood*, 141 Ill. 2d 244, 275, 565 N.E. 2d 1302, 1316 (1990). Typically, because of the limited number of cases analyzing personal jurisdiction on state constitutional grounds, courts look to the federal due process clause to construe the Illinois due process clause. *See Hyatt Int'l Corp.* v. *Coco*, 302 F.3d 707, 725 (7th Cir. 2002); *RAR, Inc.*, 71 F.3d at 1276-77; *Curry* v. *Vencor Hosp.*, No. 01 C 4256, 2002 WL 398602, at *2 (N.D. Ill. Mar. 14, 2002); *McMurray* v. *Improvement Inc.*, No. 00 C 7137, 2001 WL 561376, at *1 (N.D. Ill. May 22, 2001). This court will do the same, as neither party makes any argument on state constitutional grounds and instead argue that this case is resolved by reference to federal constitutional standards.

7

"The Due Process Clause of the Fourteenth Amendment limits when a state may assert *in personam* jurisdiction over nonresident individuals and corporations." *RAR, Inc.*, 107 F.3d at 1277, citing *Pennoyer v. Neff*, 95 U.S. 714, 733 (1878). In order to be subject to *in personam* jurisdiction, the defendant must have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940). This standard, however, varies depending on whether the state asserts "general" or "specific" jurisdiction over a defendant.

### 1. *General Jurisdiction*

General jurisdiction refers to suits "neither arising out of nor related to the defendant's contacts, and it is permitted only where the defendant has 'continuous and systematic general business contacts' with the forum." *RAR, Inc.*, 107 F.3d at 1277, quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). Stericycle fails to show that the Sanfords' contacts with Illinois were continuous and systematic enough to give rise to the level of general jurisdiction. As such, the court concludes that general jurisdiction does not exist over the Sanfords.

### 2. *Specific Jurisdiction*

Specific jurisdiction refers to personal jurisdiction over a defendant in a suit "arising out of or related to the defendant's contacts with the forum." *Helicopteros*, 466 U.S. at 414 n.8. Under a specific jurisdiction inquiry, the court looks to see if a defendant has the minimum contacts necessary to make the assertion of personal jurisdiction fair and reasonable under the circumstances. *Burger King v. Rudzewicz*, 471 U.S. 462, 476-77 (1985). Crucial to this inquiry

is a showing that the defendant "should reasonably anticipate being haled into the court [in the forum state] because the defendant has 'purposefully avail[ed] itself of the privilege of conducting activities' there." *RAR, Inc.*, 107 F.3d at 1277, quoting *Burger King*, 471 U.S. at 474-75. In other words, it must be foreseeable to the defendant that their contact with the forum state make it reasonable to subject them to personal jurisdiction. *Id.*

Stericycle attempts to illustrate the Sanfords' contacts with Illinois by separating them into categories, including: (1) the Sanfords' initial contact with Illinois, consisting mostly of discussions Stericycle had with the Sanfords in 1997 and 1998 concerning Stericycle's interest in purchasing the SMI Businesses and a trip to Illinois during these discussions; (2) the Sanfords' overtures to Stericycle regarding a possible deal involving the Assets, which included Craig initiating contact with ten Brink, frequent telephone discussions about a possible deal, and the faxing of several draft agreements to Stericycle in Illinois; (3) the October 17 Agreement itself, which involved Assets that were not located in Illinois; (4) the Sanfords seeking assistance from Stericycle in closing a deal for the Assets from Med/Waste, including sending drafts to Stericycle of possible agreements between the Sanfords and Med/Waste and soliciting advice from Stericycle's lawyers; and (5) the Sanfords attempt to negotiate a new deal with Stericycle, including telephone and letter contact with Stericycle in Illinois and a trip to Illinois in an attempt to consummate a deal.

In breach of contract cases, the court looks only to the "dealings between the parties in regard to the disputed contract that are relevant to minimum contacts analysis." *Id.* at 1278, quoting *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 153 (3d Cir. 1996). The court may not, therefore, aggregate all the Sanfords' contacts with Illinois "no matter

9

how dissimilar in terms of geography, time, or substance." *Id.* Instead, Stericycle's cause of action must "*directly arise* out of the specific contacts between the defendant and the forum state." *Id.* (emphasis in original), quoting *Sawtelle v. Farrell*, 70 F.3d 1381, 1389 (1st Cir. 1995).

Any negotiations or visits to Illinois concerning Stericycle's interest in purchasing the SMI Businesses from the Sanfords in 1997 and 1998 will not be considered, as those contacts do not stem from the October 17 Agreement at issue here. Conversely, negotiations and contacts formulated in furtherance of the October 17 Agreement are properly considered. The more difficult question, however, is posed by the contacts after the October 17 Agreement. The Sanfords argue that these contacts should not be considered, as they do not give rise to the cause of action for the October 17 Agreement. The Sanfords maintain that, at most, these post-agreement contacts relate to the Sanfords' efforts to comply with the terms of the Agreement and/or concern negotiations to formulate an entirely new deal.

The dealings between the parties in regard to the disputed contract do not vanish after the contract itself is formed. Stericycle points to contacts the Sanfords had after the October 17 Agreement that both informed Stericycle of developments in a separate contract closely related to the October 17 Agreement and attempted to convince the Sanfords to comply with the October 17 Agreement. The court refuses to take such a restricted reading of "arising out of the contract" as to bar inquiry into these post-Agreement contacts that related to the October 17 Agreement itself. That being said, the court will not consider the Sanfords' trip to Illinois in June 2002, as ten Brink himself admitted that this trip did not relate to the October 17 Agreement but instead was for the purpose of attempting to "negotiate a new deal." (ten Brink Decl. ¶ 26.)

Having determined which contacts are properly examined in a specific jurisdiction analysis, the court addresses the ultimate question: do these contacts constitute sufficient minimum contacts with Illinois and make the assertion of personal jurisdiction foreseeable and otherwise reasonable? Relevant factors in contract cases include who initiated the transaction, where the contract was entered into, and where performance of the contract was to take place. *E.g., General Binding Corp.* v. *McBride*, No. 01 C 5860, 2002 WL 825032, at *2 (N.D. Ill. April 30, 2002); *Unis Int'l Corp.* v. *M.L. Mktg. Co.*, No. 93 C 0329, 1993 WL 116744, at *3 (N.D. Ill. April 14, 1993).

The Sanfords concede that they initiated the contact with Stericycle that led to the making of the October 17 Agreement. (Def. Rep. at 6.) They maintain, however, that: (1) all the negotiations with Stericycle consisted of telephone calls and/or facsimile transmissions and did not take place in person in Illinois; (2) the October 17 Agreement, originally drafted by Stericycle in Illinois, was reviewed, revised and executed by the Sanfords in Pennsylvania; (3) all the Assets subject to the contract were located outside of Illinois; and (4) the contract required no performance in Illinois.

Viewing the contacts in their totality, the court cannot say that the Sanfords had such contacts as to make it foreseeable that they would be subject to suit in Illinois. While the Sanfords initiated the discussions concerning the October 17 Agreement, "[t]he constitutionality of jurisdiction does not turn on which party 'started it.' Rather, pinning down which party initiated the transaction is merely one helpful factor in the jurisdictional equation." *Logan Prods., Inc.* v. *Optibase, Inc.*, 103 F.3d 49, 53 (7th Cir. 1996). Other factors, outside of the initiation of the contract, counsel against personal jurisdiction under the facts of this case. While

11

the Sanfords did have frequent telephone and facsimile contact with Stericycle in Illinois, these communications related to the contract which was to be performed entirely outside of Illinois, a factor weighing against personal jurisdiction. *See Federated Rural Elec. Ins. Corp.* v. *Inland Power & Light Co.*, 18 F.3d 389, 396 (7th Cir. 1994). Moreover, the Sanfords never traveled to Illinois in negotiating the contract, did not execute any part of the contract in Illinois and none of the Assets were located in Illinois.

"[A]n out-of-state party's contract with an in-state party is alone not enough to establish requisite minimum contacts." *RAR, Inc.*, 107 F.3d at 1277, citing *Burger King*, 471 U.S. at 478. Instead, the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing must indicate the purposeful availment that makes litigating in the forum state foreseeable to the defendant." *Id.*, quoting *Burger King*, 471 U.S. at 479. The parties' negotiations and future consequences fail to make it clear that the Sanfords in any way purposefully availed themselves of the privilege of conducting business in Illinois. The only connection Illinois has with this case is that an out-of-state party initiated negotiations with an Illinois corporation with a presence in forty-eight states by telephone, fax and mail on a contract to be performed entirely outside of Illinois concerning assets located outside of Illinois. If the court were to find personal jurisdiction it would, in essence, be simply asserting personal jurisdiction because an out-of-state party negotiated a contract with an in-state party. As the Supreme Court made clear in *Burger King*, however, contacts that result from such a contract are, in and of themselves, not sufficient to rise to the level of minimum contacts necessary for personal jurisdiction. 471 U.S. at 478.

Stericycle responds by pointing to numerous cases that it believes establish jurisdiction

but that this court concludes are distinguishable. For example, in *Global Relief* v. *New York Times Co.*, No. 01 C 8821, 2002 WL 31045394 (N.D. Ill. Sept. 11, 2002), the court allowed personal jurisdiction over an out-of-state newspaper with a small circulation in Illinois because the newspaper was fully aware that it was distributing copies of its newspaper in Illinois. *Id.* at *7. No similar contacts with Illinois are present in this case. Moreover, in *General Binding Corp.*, 2002 WL 825032, the court found personal jurisdiction over a defendant where all negotiations were done by mail, phone or electronically because the contract was to be at least partially performed in Illinois and the contract itself provided for the application of Illinois law, a factor the court found to be "compelling evidence of intent." *Id.* at *2. This court could continue to list cases, but the point is clear: cases Stericycle points to with contracts involving out-of-state parties at the very least also included some connection or performance related to Illinois. The court does not believe such facts are present here. As such, the court concludes that it lacks jurisdiction over the Sanfords.

**B.     Motion to Transfer Venue**

The Sanfords further move, in the alterative, to transfer venue in this case to the Eastern District of Pennsylvania under the provisions of 28 U.S.C. § 1404. This motion is denied as moot.

13

## CONCLUSION

For the reasons stated above, the court grants the Sanfords' motion to dismiss for lack of personal jurisdiction [#5-1] and denies as moot the Sanfords' motion to transfer venue [#5-2]. This case is dismissed without prejudice.

ENTER: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: December 20, 2002